We'll hear argument next in Hillman v. Toro Company. Good morning, Your Honor. Good morning. My name is Stephen Crowley and I represent Rebekah and Jennifer Hillman and their minor daughter. We're here on this diversity personal injury products liability case this morning to ask this case, or excuse me, this court to reverse four decisions that were made on September 30, 2024. On that date, the district court entertained three motions to exclude our liability experts filed by Toro and one motion for summary judgment filed by Toro. In about a 30-page opinion, the court excluded all three liability experts, all of their opinions, and then granted summary judgment based on the fact that we no longer had any liability testimony from experts. An understanding of this case and the importance of the Daubert analysis under Rule 702. You do realize that Rule 702 has been amended twice since Daubert to replace the Supreme Court standard with a new standard in the rule. Shouldn't we just refer to Rule 702? Yes, Your Honor. An understanding of why we believe the court should reverse all four orders requires a brief review of facts. There's only one order before us, counsel. Pardon me, Your Honor? There's only one order before us. It's the order dismissing and granting summary judgment. There are different reasons for the order, but there's just one order. Thank you, Your Honor. Mr. Crowley, there are a lot of issues. Time is limited. It would be helpful to me if you could focus in, and I hope the defense will as well, on Mr. Berry's report and specifically his opinion on the lack of an independent break in the product here. It's in pages 6 to 10 of his report. And what I was looking for was someplace where the district judge engaged with that theory from Berry. Your Honor, I don't recall her, the judge, even discussing that portion of it. I think that's correct. She didn't. There were a number of areas of each expert's opinion that were never addressed. Well, as the court probably already knows, this involves a personal injury in which a 50-year-old woman from Cologne, Illinois, lost the lower portion of her left leg when her Toro time cutter mower went out of control because the steering and braking had been disconnected by some pins that were installed by Toro. Specifically for the purpose of moving the mower when it needed to be towed or moved. The criticism, as you know, of our experts was that the mower had no independent brake when these pins were pulled out to move it. There were no instructions and warnings that when the pins were out, you always had to make sure they were back in or you would have no brake, despite the fact that it did say they had a parking brake, which was really just a park block. The difference is an independent service brake will stop the mower once it's moving. A park block does not. The other two issues are an interlock, which the mower had but were not wired to the pins, the disc edge pins, and the lack of a rollover protective system, which is a seat belt and overhead bar to protect from injury in an overturn. First of all, this is a straightforward engineering case. It's not like Daubert. It's not, you know, drug causation. I must say, I don't understand how it's a straightforward engineering case. Everybody agrees that the lawnmower could have been built differently. Right. The question is whether it's tortious not to build it differently. Everything in the world can be safer. What's the theory under which it is tortious not to make it safer? Because the ANSI standard, which Toro was so proud to say they complied with, actually says initially. If you could use real words rather than initialisms like ANSI, that would help us amateurs. I'm trying to save my time. The American National Standards Institute had a standard that Toro says it complied with, and it says thou shalt have an independent service brake so that the mower can be stopped. We're all riding mowers. But there's an exception that says if it's a hydrostatic mower, you can incorporate it into the brakes. You're not dealing with my question. I'm sorry. Which is what makes something tortious? Presumably it's the absence of cost justified precautions. You don't want to say that Toro has to make every lawnmower cost a million dollars in order to avoid a 1% chance of a nicked finger. There has to be some cost justification for the precaution. I'm asking what is the evidence in this record that the precautions for which the plaintiff demanded were cost justified? Thank you, Your Honor. I will address that. Every one of the devices or the changes that the plaintiff's experts proposed were cost effective, in fact, in use in other lawnmowers. No, look, I am asking you to point to evidence in this record that the proposed precautions were cost justified. I'm not asking for lawyers' talk. I'm asking for evidence. Your Honor, perhaps I misunderstood your question, and if so, I apologize. We did not do a cost analysis per machine. We simply pointed out through our experts that other machines use them and are marketed and sold every day. And these were devices that were either already on. But you're now admitting that there is no evidence that these precautions were cost justified. No, Your Honor. One reason why I ask this is because it apparently is agreed that Toro makes a lawnmower with several of the precautions the plaintiffs want, and plaintiffs didn't buy it because it was too expensive, suggesting that the precautions are possible, easy, but not cost justified. Isn't that something one wants to deal with? With all due respect, Your Honor, I think that oversimplifies the question because when people buy a lawnmower, they don't necessarily stand in the same shoes as Toro. They're not experts in machine design, guarding, and safety. They don't have a record as Toro does. So Toro asserts, without any response from you, that there have been no other accidents of this kind since 2005, which suggests that there's very little to gain from more precautions. Now, maybe that's wrong, but I didn't see any response from you. Your Honor, the response is straightforward. I believe that the claim that you were talking about was that Toro submitted Mr. Porter's affidavit, that they had no record of a case where a Toro time cutter had lost control because the tow pins were out. But they've had lots of loss of control accidents in which people were injured, severely injured, and killed. So the point being the hazard identified by the safety engineers is it's loss of control. And whether it happens because an operator forgets to put the pins back in after they move it 40 feet up a hill, or whether a motor fails, which happens, the idea is that one must have a consistent brake that is independent of the hydrostatic system to bring the machine to a stop and prevent loss of control and potential injury. Interestingly enough, we also pointed out in response to your question, Judge Estepra, that Toro produced its own PowerPoint, which we quoted in our brief. They considered these things. They considered the litigation and said, maybe we should put ROPS on all of our residential mowers, even though they don't weigh 1,200 pounds. And you were just referring to ROPS, rollover protection systems? Rollover protective system, yes, Your Honor. Can I just ask, is the theory that the operator should be belted in and unable to jump off as the mower goes over a cliff? Yes, Your Honor. I'll just have to say that seems pretty counterintuitive to me. Now, that's entirely separate from the independent brake theory. Yes, it is. And maybe you should be aware that it was not that long ago that a case was argued in this court where the plaintiff said that the presence of a rollover cage on a forklift was tortuous because it prevented her from jumping out. Fortunately, Your Honor, I was not part of that case, and I'm not familiar with it, but I understand the point. It was actually discussed in the briefs in this case. Two of us were on that case. Well, Your Honor, I can tell you this, that the information that Mr. Berry presented, the articles showing 99% effectiveness in ROPS for tractors, mowers, and all implements, showed the most likely way to prevent a serious injury was to belt the occupant so they didn't jump off like, unfortunately, Rebecca Hillman did, and it fell on her anyway. Why didn't Mr. Berry test that theory? Isn't that what the district court's problem was? There was no testing, no method here. Yes, that's correct, Your Honor. The problem setting up that test is actually setting up a reliable, relevant test with either human subjects or some kind of simulation. If you do the simulation, you can't necessarily set up the parameters for when an occupant would feel enough danger to jump off. That's why the seat belt is there to give them the best chance of staying uninjured inside the space created by the overhead bar. There's really no way to do it. Simulation dummies, hybrid 3 dummies, cannot be programmed to react like human beings. They only have sensors on them to tell you injury threshold and likelihood of injury. The experts which the district court excluded were a mechanical engineer with over 30 years of experience in failure analysis, safety engineering, accident reconstruction. He presented a 14-page Rule 26 report filled with calculations, information, and digital surveys. A digital survey, by the way, that was used by the defense expert to form his extensive opinions and conclusions in which he claimed were within a reasonable degree of engineering certainty. Mr. Berry had over 40 years of experience. He actually designed rollover protective systems and had an extensive bibliography attached to his 30-page report. Mr. Kennett was a biomechanical engineer who was actually a researcher and experimenter in biomechanics and human tolerances for injury and protection for mitigation or prevention of injuries. His 15-page report was based on the actual medical records, the x-rays, and so forth. The facts relied upon by the plaintiff's experts were all virtually admitted. The accident reconstruction, how it happened, how much distance Mrs. Hillman would have had to apply a brake had she had one and stopped the machine, all four of these. As the court said in Madden, a design defect is established under Iowa law by evidence of a practical, cost-effective alternative that was technologically feasible and that would have prevented plaintiff's injury. If there was an independent brake, Mr. Belick's accident reconstruction showed she had enough time and distance to use that brake. By the way, this lady is an equipment operator, a heavy equipment operator. Thomas Berry demonstrated with a long history of these devices that they were cost-effective, and the evidence, Judge Easterbrook, that they were probably cost-effective is in Toro's own documents that we quote in the brief and in their PowerPoint, and the fact that they now do have a ROPS as an option available. They have a what? Pardon me? A rollover protective system. I apologize, Your Honor. We're amateurs. Where is the most specific evidence on the cost-effectiveness of an independent brake? It would be in Mr. Berry's report, and that actually less expensive mowers than this $3,000 Toro had independent brakes. Finally, Mr. Kennett pointed out that based on the x-rays and the way that both sides say the mower fell, that it was when the front end of the mower actually came down on Mrs. Hillman's leg and fractured it so badly it had to be amputated. That was the majority of the fall was all there. The 600 pounds came down on her leg, and then it tipped over. The defendants came in, told the court, wait a minute. We have an expert that says it would have flipped completely over, and all 600 pounds would have come down on top of Mrs. Hillman's head and neck because it would have been protruding. No calculation, no test, no simulation, nothing. But unfortunately, that is. Thank you, Counsel. Pardon me? Thank you, Counsel. Thank you. Good morning, Florence. May it please the court. I'm Kirk Florence on behalf of the Appalee, the Toro Company. Mr. Florence, I and I think my colleagues would like you to focus on the question about the absence of a mechanical break. Yes, Your Honor. Which the district court did not discuss. The issue was discussed in the lead-in part of the opinion, discussing at length all of the facts, including the fact that the braking system on this particular mower complied with the American National Standards Institute standard and specifically has the type of surface brake that is called out in that particular state. Is that an absolute defense under state law, compliance? It is not, but it is a relevant question. Ever since Carroll Towing, that has not been a defense. Right. So we'd like you to concentrate on that question. Right. And the plaintiff's experts brought forth no testimony or evidence of any testing that such a brake would be feasible or would have prevented this accident in any way, shape, or form. Well, they did testify it wouldn't have happened if there had been one. And Barry says it makes it unreasonably dangerous not to include it. The district judge didn't engage on this question. How do we affirm a decision to exclude that opinion where the district judge didn't engage? Number one, I don't believe the issue was preserved for appeal. And secondly, on top of that. How was it not preserved for appeal? I don't recall a specific discussion of that within the briefing, Your Honor. It's there. Okay. The district court was very clear that an ipsy-dixit statement by an expert that simply says the obvious is not sufficient to meet the rules. That was with respect to causation, and it is pretty obvious. And that's really sort of a side point. The real question is Barry's opinion, right? That's correct, yes. Okay. Can you focus on that? Yes. Barry's opinion was focused. Do you want me to continue on on the independent brakes? Yes. That's the plaintiff's best argument. So that's what you need to address. Right. And the order says what it says, and it is not addressed in there. The evidence was before the court challenging that testimony. Again, there's nothing that would show that there was anything feasible or helpful about it to the jury. It's on your other products, right? It is on some other products. Right. So there's nothing infeasible about this. And we've got Barry saying, look, these hydrostatic braking systems, and he cites some other folks as well, are not sufficiently reliable that you can safely opt half of one of these things without an independent brake. Now, that may be right. It may be wrong. I don't know. But what's the basis for excluding that opinion? The basis for excluding it, Your Honor, is that this is a very unique set of circumstances that led up to this. That's not actually a very persuasive reason because there could be, and I understood Barry to be saying there are a lot of reasons and ways in which the hydrostatic braking may fail. Now, here, there's this tragic mistake by the plaintiff herself, pushing the pins in, failing to pull them back out again. I think we all understand that. And maybe your position is we don't have to protect her against her own folly like that or her own absent-mindedness. If so, then that's an argument. But Barry is responding to exactly that kind of theory and saying there are a lot of reasons that the main braking system may fail. That's why you need an independent one. What's wrong with that as a matter of law that requires it to be excluded? Because the proximate cause of this incident, Your Honor, was the plaintiff's admitted failure to reengage the mower into its operation mode before they began to operate the mower itself. The mower had fully functioning brakes on it at the time of this incident. There was no need for an additional brake because it had that. There's no suggestion that the braking was not working or that it failed. It's only that the plaintiffs knew they needed to reengage the mower's functionality and failed to do so. So is this another version of the contention that an extra precaution is unnecessary because there's never been another accident like this? Where we treat 2005 as the reasonable equivalent of never. It is. And 2005 is where we went back to because that was the scope of discovery. So when I put that to Mr. Crowley, he said, yes, but the record shows other loss of control accidents, not necessarily caused by failing to set the pins correctly. And if there are other loss of control accidents, presumably a mechanical brake could deal with those. So is there in this record some assessment of whether there are net benefits in having a mechanical brake? I'm not aware of any. The other incidents that were discussed by Mr. Crowley. Not by the plaintiffs, not by the defendants, and no suggestion that the plaintiff's expert didn't know what he was talking about. Right. About mechanical brakes. That's right. The problem is that this mechanical brake system really doesn't fit into the type of incidents that Mr. Berry discussed in his report and in his deposition. He was focused on a sideways or lateral type of rollover or a rear rollover. That was his evidence about the rollover cage. Right. And we're not asking about the rollover cage. We're asking about a mechanical brake. And there's no evidence to suggest that it would have made a difference at all. Sure. Sure there is. He said it did. He said it would have. Vilek and Berry both said, and it seems almost, and the district judge thought it was perfectly obvious that with a brake this wouldn't have happened. Well, that would be a third brake on the mower. And there's no testing. The parking brake is useless for this purpose, right, once the mower is moving. So the question is, does a backup brake in case the hydrostatic system fails, is that necessary for the mower to be reasonably safe? And it's not because there's not a record of incidents suggesting that this is even a concern or a problem with this mower. So what do we make of Berry's account, for example, of, talks about patents, the failures of the so-called hydrostatic braking, that its braking capability does not eliminate the need for a service brake in case of transmission failure. Hydrostatic braking must not be considered the primary braking device for vehicles in static conditions either with the engine running or the engine off, et cetera, et cetera. I mean, look, I don't claim to be an expert on this myself, but I'm reading Berry's report, and it is not, I'm looking for a sound reason to exclude it, particularly where the district judge didn't really address this point. Had he tested this theory and come forward with evidence of that, it would have, then there might be a basis. What's the test? Well, that's a complex maneuver. When you are dealing with a machine, and you are accustomed to using the levers for the service brake, and you have a separate parking brake, this is a third brake that would be operated either by hand or by a foot pedal that requires a lot of coordination. You have it on your other, some of your other motors, mowers? I think they are on some. Yeah. So we know it's feasible, right? It's not typical, and I don't know the reasons for it on the other. This sounds to me like the kind of debate that you ought to have in front of a jury with competing experts. Give me a reason to, I'll try one more time. Can you give us a reason we should affirm the exclusion of Barry's opinion on this subject of an independent brake? Because it doesn't fit with the failure that happened here in this case. It does not relate to the facts of the case, which is not that there was a failure of the hydrostatic motors or the braking system. It was disabled by the plaintiffs, and they knew they needed to reinstate it, and they didn't do so. That's the reason that the incident happened. It's not because of the lack of this independent third type of brake. As to the remainder of the court's opinion, this court should affirm on all points because this is really an abuse of discretion standard. The de novo aspect of the court's review is limited to whether the district court performed an adequate gatekeeping. That's part of your problem. Since the district court didn't discuss the mechanical brake part of that report, we can't apply an abuse of discretion standard because the district judge doesn't seem to have used any. Well, as to all other aspects of the case, I believe that the district court did so. And hopefully I've addressed your point to your satisfaction on the independent brake issue. And the other issue to address is the failure to warrant claim, and the district court reviewed that independently of the expert witness issues that we've been focusing on here today. And found that there was not proximate cause. And that was also not proximate. Plaintiff doesn't even argue that on appeal. That's correct. That's correct. So I think that is a part of the order that can also be affirmed quickly. I also want to briefly just address the question of the district court's understanding of the incident itself. The court's order, I think, demonstrates very clearly that she understood the dynamics of this accident and she laid them out in great detail. The parties, frankly, do not have any disagreement about the dynamics or the way that this accident happened. Finally, Your Honors, I think it's important to note that we talked about the ANSI, American National Standards Institute standards. They do include addressing the type of surface brake that is required here. That is a relevant factor in whether there is a defect in the case, or defect in this particular mower. And we would submit that there is no evidence to suggest that there was not one. And if the court has more questions, I'm happy to address those. But otherwise, I will yield back my time. Thank you, Your Honors. Thank you very much, Counsel. The case is taken under advisement.